UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-440 (JR) |
| ) | |
| KEVIN ELLIS ) | |
| ) | |

MOTION TO SUPPRESS EVIDENCE,
INCORPORATED MEMORANDUM IN SUPPORT THEREOF, AND
REQUEST FOR EVIDENTIARY HEARING

Kevin Ellis, by his attorney, Rita Bosworth, Assistant Federal Public Defender, respectfully moves this court to suppress physical evidence, statements, and any other tainted evidentiary "fruits" resulting from the investigation, searches, and arrest in this case. This motion is made pursuant to Fed. R. Crim. P. 12(b)(3), and is supported by the discussion below. An evidentiary hearing on this motion is respectfully requested.

STATEMENT OF FACTS[1]

Mr. Ellis was charged, in a two-count indictment filed December 8, 2005, with Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base and Unlawful Possession with Intent to Distribute Cannabis, both in violation of 21 U.S.C. § 841(a)(1).

According to the law enforcement reports filed in this case, on November 12, 2005, MPD Officers Austin and Delaney were on patrol and received a radio run for "disorderly" at 1705 Benning Road, N.E., #C13 in Washington, D.C. The radio run indicates that the officers were

---

[1]This statement of the facts is a summary based on the police reports provided as discovery in this case. By including in this motion the facts as alleged by government witnesses, Mr. Ellis does not in any way concede that these facts are accurate or true.

informed that a woman called the police and said that her "friend," who was in her home, had drugs and a gun in his white Cadillac, which she stated was parked outside the home. The Officers went to the home, but the did not see a white Cadillac. Nevertheless, they proceeded straight inside to the rear bedroom, where they found Mr. Ellis. They claim that as Mr. Ellis complied with their request to leave the room, they saw a bag containing a green leafy substance. The officers arrested Mr. Ellis. After his arrest, they looked inside a closed dresser drawer and found cocaine base underneath some socks.

## ARGUMENT

**I. THE PHYSICAL EVIDENCE RECOVERED ON NOVEMBER 12, 2005, MUST BE SUPPRESSED AS THE TAINTED FRUIT OF AN ILLEGAL SEARCH AND SEIZURE.**

The Fourth Amendment of the United States Constitution requires that all searches and seizures be "reasonable." Vernonia School District 47J v. Acton, 515 U.S. 646 (1995). In order for warrantless searches and seizures to be "reasonable," they must be supported by a limited exception to the warrant requirement, such as probable cause. New Jersey v. T.L.O., 469 U.S. 325, 341-42 (1985). In the instant case, it is uncontested that the police did not have a warrant to search the home. The facts demonstrate that, under these circumstances, there was also no exception to the warrant requirement that would permit the police to search without a warrant. The search of the apartment was therefore illegal.

To begin with, the officers did not have probable cause to conduct a search. An anonymous phone call alone does not provide sufficient justification for a search. See Florida v. J.L., 529 U.S. 266, 270-71 (2000); United States v. Davis, 235 F.3d 584, 597 (D.C. Cir. 2000). According to the radio run, the officers received a call from dispatch informing them that

someone called 911 and stated that "her friend" was in her apartment with drugs, and that the friend's vehicle, a white Cadillac, was outside the apartment. She stated that the Cadillac had drugs and a gun inside. In response to this phone call, the police went to 1705 Benning Road, N.E. However, they did not see a white Cadillac outside, and they therefore did not find drugs or a gun inside a white Cadillac. Despite the fact that the information from the phone call did not match up whatsoever with what the officers observed on the scene, they decided to enter and search the home. This was illegal. The phone call came from an unverified source and gave faulty information. It therefore did not provide probable cause to search the home, and the fruits of that search must be suppressed.

In addition to a complete absence of probable cause, the officers also did not have consent to search the home. When they arrived at the front door, nobody allowed them inside. In fact, the person whose home it was was not even present during the incident. The police went straight inside the house without consent, and they proceeded straight to the back bedroom, still without consent. When they got to the back bedroom, they found Mr. Ellis asleep in a chair. They asked Mr. Ellis to come to the living room, and he complied. It was only after Mr. Ellis got up from the chair that the officers noticed a bag of green leafy substance in the room. However, because they had no consent, or other justifiable reason, to be in the room in the first place, this bag is the tainted fruit of an illegal search.

Finally, there was absolutely no basis for the police to search the dresser in the back bedroom. This search can only be characterized as a search incident to arrest. When an in-home arrest is taking place, the Fourth Amendment "permits a properly limited protective sweep . . . when the searching officer possesses a reasonable belief based on specific and articulable facts

that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 336 (1990). However, such a protective sweep is extremely limited. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id., 494 U.S. at 327. The sole purpose of the sweep is to secure the safety of the individuals in the home; it is not an opportunity for officers to conduct an unjustified search. At the time the officers searched the dresser drawer, Mr. Ellis was already in custody, and he was not even in the rear bedroom. Because there was no threat to officer safety in the rear bedroom, there was no basis for them to conduct a search of that room. The drugs found in the dresser must therefore be suppressed.

## II. ALL STATEMENTS MADE BY MR. ELLIS ON NOVEMBER 12, 2005, MUST BE SUPPRESSED BECAUSE THEY WERE INVOLUNTARY AND MADE IN VIOLATION OF MIRANDA.

The government has alleged that Mr. Ellis made statements during his arrest. Before introducing those statements at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statements were voluntary. See Lego v. Twomey, 404 U.S. 477 (1972). The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker." Culombe v. Connecticut, 367 U.S. 568, 602 (1961). The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation." Mincey v. Arizona, 437 U.S. 385, 402 (1978). The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily. Fikes v. Alabama, 352 U.S. 191 (1957); see also Gallegos v. Colorado, 370 U.S. 49 (1962) (determination of whether an

accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny of the facts of each individual case); Clewis v. Texas, 386 U.S. 707 (1967).

Specifically, the Court must examine the efforts to overbear the defendant's free will in relation to his capacity to resist those efforts. Davis v. North Carolina, 384 U.S. 737 (1966); Culombe, 367 U.S. at 607. The Court must examine the defendant's "background, experience, and conduct," *North Carolina v. Butler*, 441 U.S. 369, 375 (1979), to determine whether his statements were the product of a rational intellect and a free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1980). Here, the evidence at a hearing will show that any statements made by Mr. Ellis were made involuntarily and thus must be suppressed under the Fifth Amendment.

Even if the statements were made voluntarily, Miranda requires suppression of Mr. Ellis's statements during the government's case-in-chief because he was not adequately apprised of his right against self-incrimination prior to undergoing custodial interrogation. See, e.g., Pennsylvania v. Muniz, 496 U.S. 582, 110 S. Ct. 2638, 2643-44 (1990). A person is in "custody" under Miranda when he "has been . . . deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

The government bears the heavy burden of establishing that proper Miranda warnings

were given to the defendant and that an intelligent and voluntary waiver of those rights occurred prior to questioning of the defendant. Miranda, 384 U.S. at 475. As the Court recognized in Moran v. Burbine, 475 U.S. 412 (1986),

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id*. at 421.

In the case at hand, there were three MPD officers, with weapons, in full uniform that entered the apartment without consent. The officers went to the back bedroom and immediately ordered Mr. Ellis to stand up and come to the front of the house. This situation constituted custodial interrogation because Mr. Ellis's freedom of movement was constrained by the presence of the three armed MPD officials. Accordingly, any statements he made while the police were present must be suppressed. Similarly, when the police officers placed Mr. Ellis under arrest and in handcuffs, he was clearly in custody for purposes of Miranda. As such, any statements made at this time were the product of custodial interrogation, and must also be suppressed.

Finally, the videotaped statement must be suppressed because it was made in violation of Miranda. It is well established that once a defendant is apprised of his Miranda rights and refuses to answer questions without a lawyer present, the police may not continue asking him if he would like to waive his right to counsel. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) (holding that "an accused . . . having expressed his desire to deal with the police only through

counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication"). Here, Mr. Ellis filled out a waiver form at 11:30 in which he answered "N" to the question: "Are you willing to answer any questions without having an attorney present?" Mr. Ellis apparently filled out a subsequent waiver form at 12:51 in which he answered "Yes" to the above question, after which he gave a videotaped statement to the police. However, once a defendant invokes his Fifth Amendment right to counsel, the police may not continue asking him if he would like to waive it. The second waiver here is invalid because the police continued to ask Mr. Ellis if he wanted to waive his rights even after he initially said he did not. The subsequent videotaped interview of Mr. Ellis was therefore in direct violation of the Fifth Amendment, and it must be suppressed.

## CONCLUSION

For the foregoing reasons, and any other reasons that the Court may deem just and reasonable, Mr. Ellis requests that the Court suppress the drugs that were recovered and all statements made by Mr. Ellis on November 12, 2005, including the videotaped statement, along with any other evidence or statements obtained by the officers in violation of the Fourth and Fifth Amendments. Mr. Ellis respectfully requests an evidentiary hearing on this motion.

Respectfully submitted,

A. J. KRAMER
Federal Public Defender

"/s/"
RITA BOSWORTH
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC  20004
(202) 208-7500